UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

RICHARD MATHIS,
      Petitioner,

vs.                          Case No.:  4:20cv304/WS/ZCB

RICKY D. DIXON,
      Respondent.

_____/

## **REPORT AND RECOMMENDATION**

This is a federal habeas corpus case filed under 28 U.S.C. § 2254. (Doc. 1). Petitioner is Richard Mathis, a prisoner in the Florida Department of Corrections who is serving a life sentence for sex offenses involving a minor. Respondent has answered the petition, and Petitioner has replied.[1] (Doc. 16; Doc. 22). For the reasons below, Petitioner is not entitled to habeas relief.[2]

---

[1] Respondent's answer addressed two additional ineffectiveness claims that Petitioner presented to the state courts. (Doc. 16 at 6, 26-29). Petitioner did not present either of those claims in his § 2254 petition (Doc. 1). Thus, they are not properly before the Court and will not be considered.

[2] The Court believes this matter may be resolved without an evidentiary hearing. Rule 8(a), Rules Governing Section 2254 Cases.

1

## I.    Factual Background

The evidence at trial established that Petitioner was married to Emma Mathis.  Emma Mathis was the aunt of M.S.  (Doc. 16-7 at 33). When M.S. was 9 years old, she and her sister often slept over at Petitioner and Emma Mathis's house.  (*Id.* at 33-35).  Petitioner and Emma Mathis had two daughters, and all the girls slept together in the kids' bedroom during the slumber parties.  (*Id.* at 35).

Petitioner often came home drunk, and he would pull M.S. out of the kids' bedroom to another room.  (*Id.* at 35-36).  Petitioner would instruct M.S. to lie down on the bed, and he would then lubricate her vagina with Vaseline.  (*Id.*).  Then Petitioner would get on top of M.S. and insert his penis into her vagina.  (*Id.*).  While doing this, Petitioner would place a pillow over her head.  (*Id.*).  He also threatened to kill M.S. if she told anyone about the abuse.  (*Id.* at 36-37).  The abuse occurred "constantly" from the time M.S. was 9 years old until she was 12 years old.  (*Id.* at 37-39).

M.S. told the jury about a specific instance that occurred when she was 12 years old.  Petitioner and Emma Mathis had moved into M.S.'s

2

grandmother's house. (*Id.* at 37-39). One day, M.S. walked to her grandmother's house to find Petitioner there alone. (*Id.* at 39-40). Petitioner was outside, and M.S. went inside and watched TV in the living room. (*Id.* at 40). Petitioner then came inside and called M.S. into a bedroom. (*Id.* at 41). When she entered the bedroom, Petitioner told her to lie down on the bed. (*Id.*). He then removed M.S.'s clothes, put a pillow over face, and inserted his penis into her vagina. (*Id.* at 41-42).

After that incident, the abuse stopped for a couple of years before resuming prior to M.S.'s 16th birthday. (*Id.* at 42-45). At that time, Petitioner drove a school bus that he would park in the back yard. (*Id.*). M.S. explained that Petitioner took her into the bus and inserted his penis into her vagina. (*Id.* at 42-45). The abuse stopped again until M.S. was 17 years old. (*Id.* at 46).

On November 27, 2007, M.S. got drunk at a club and asked Petitioner for a ride home. (*Id.* at 46-47). Petitioner was also drunk. (*Id.* at 48). On the way home, Petitioner stopped the truck, walked to the passenger side where M.S. was sitting, grabbed her, and pulled her out of the truck. (*Id.*). Petitioner had a small gun in his hand. (*Id.*).

3

Petitioner pushed M.S. against the side of the passenger seat and had sexual intercourse with her.  (*Id.* at 48-50).  M.S. struggled with Petitioner and finally broke free.  (*Id.* at 49).  She ran home and reported the incident to law enforcement the next day.  (*Id.* at 50-51).

On January 12, 2008, M.S. learned that she was pregnant.  (*Id.* at 52).  She gave birth to a baby on August 26, 2008, at the age of 17.  (*Id.* at 30-31).  A DNA test revealed that Petitioner was the baby's father.  (*Id.* at 85-92).

Petitioner was subsequently charged in state court with sexual battery on a child under 12 years of age (Count I), lewd or lascivious battery (Count II), and sexual activity with a 16- or 17-year-old (Count III).  He went to trial, and a jury convicted him as charged.  Doc. 16-2; Doc. 16-3).  The state court sentenced him to life imprisonment on the sexual battery count and fifteen years on each of the other counts, to be served concurrently.  (Doc. 16-4).

## II.    Procedural History

Following his conviction, Petitioner appealed to the Florida First District Court of Appeal (First DCA).  (Doc. 16-8).  That court affirmed.

4

(Doc. 16-11).  Petitioner then sought state postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Doc. 16-16).  The trial court appointed counsel for Petitioner and held an evidentiary hearing on his Rule 3.850 motion.  (Doc. 16-17).  The trial court ultimately denied the motion, and Petitioner appealed to the First DCA.  (Docs. 16-18, 16-19). The First DCA affirmed.  (Doc. 16-21).

Petitioner then turned his postconviction efforts to federal court by filing the current habeas corpus petition under 28 U.S.C. § 2254.  (Doc. 1).[3]  His petition presents three ineffective assistance of counsel claims. Each will be discussed below, but first the Court will summarize the legal standard for § 2254 petitions.

### III.   Legal Standard for 28 U.S.C. § 2254 Petitions

When considering a state prisoner's § 2254 habeas petition, a federal court is not typically sitting as an appellate court with the mandate of correcting errors that may have occurred in the state court. *See Shinn v. Ramirez*, 596 U.S. 366, 377 (2022) (explaining that a federal

---

[3] Upon the parties' agreement, the Court stayed this case until final disposition of Petitioner's state post-conviction appeal.  (Doc. 13).

5

habeas proceeding is not "a substitute for ordinary error correction through appeal"). Instead, under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court applies a "highly deferential standard of review for evaluating state-court rulings [on the merits], which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citation omitted). Under AEDPA, a federal court may invalidate a state criminal conviction only if the state court decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). The state court's factual determinations "shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

"[T]o be contrary to clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the

6

Supreme Court when faced with materially indistinguishable facts."
*Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (cleaned up).  An
"unreasonable application" of federal law occurs "if the state court
correctly identifies the governing legal principle from [the Supreme
Court's] decisions but unreasonably applies it to the facts of the
particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "To meet [the
unreasonable application] standard, a prisoner must show far more than
that the state court's decision was merely wrong or even clear error."
*Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020) (cleaned up).  Rather, the state
court's application of federal law must be "so obviously wrong that its
error lies beyond any possibility for fairminded disagreement."  *Id.*
(cleaned up).  This standard reflects that the "writ of habeas corpus is an
extraordinary remedy that guards only against extreme malfunctions in
the state criminal justice systems." *Ramirez*, 596 U.S. at 377 (cleaned
up).

## IV.   Discussion

In his § 2254 petition, Petitioner has raised claims of ineffective
assistance of trial counsel.  Ineffective assistance of counsel claims are

governed by the standard found in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a *Strickland* claim, a petitioner must show that (1) counsel's performance was constitutionally deficient, and (2) prejudice resulted. *Id.* at 687. Under the deficiency prong, the inquiry focuses on "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. As for the prejudice prong, the inquiry focuses on whether the petitioner has shown there is a "reasonable probability" that the outcome would have been different absent counsel's deficient performance. *Id.* at 694. To make the prejudice showing, the "likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).[4]

---

[4] Both the *Strickland* standard and the standard for relief under § 2254 are "highly deferential." *Richter*, 562 U.S. at 105. And when—in a case like the current one—"the two apply in tandem, review is doubly" deferential. *Id.* (cleaned up). The Supreme Court has warned that "habeas courts must guard against the danger of equating unreasonableness under *Strickland*['s]" deficient performance prong with "unreasonableness under § 2254(d)." *Id.* Thus, "[w]hen § 2254(d)

Having set forth the applicable standard, the Court will now apply it to Petitioner's ineffective assistance of counsel claims.

### A. Ground One: "Ineffective assistant [sic] of counsel—failure to file (insufficiency of evidence) during trial and at end of trial."

Petitioner first claims that his trial counsel was ineffective by failing to file a motion for judgment of acquittal that challenged the sufficiency of the evidence. (Doc. 1 at 9). And he claims that such a challenge would have been successful as to the sexual battery charge (Count 1), which he says was based on hearsay and involved no medical evidence.

### 1. The state court postconviction proceedings

This claim was raised by Petitioner in his state court Rule 3.850 motion. At the state court hearing on his motion, Petitioner's trial counsel, Alex Morris, was called as a witness. (Doc. 16-17 at 6). Attorney Morris testified that he had sixteen years of criminal defense experience when he tried Petitioner's case. (*Id.* at 23). During those sixteen years,

---

applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Attorney Morris explained that he had handled many sexual battery cases as well as numerous other very serious felony cases including death penalty matters. (*Id.*).

Attorney Morris acknowledged that he made a "boilerplate" motion for a judgment of acquittal at the conclusion of the State's case and renewed it at the close of evidence. (*Id.* at 7-12). Attorney Morris did not believe that more than boilerplate motions were warranted in this case because the evidence of Petitioner's guilt was overwhelming. (*Id.*). Attorney Morris stated that M.S.'s testimony was "quite compelling," and he made the motions simply to preserve the ability to appeal the sufficiency of the evidence. (*Id.* at 7-12, 30).

Attorney Morris explained that he did not file a motion for new trial because he "did not have a factual, ethical, professional or legal basis that was anywhere close to meritorious." (*Id.* at 12). After considering the information introduced at the hearing, the state postconviction court rejected Petitioner's argument. The court applied *Strickland* and found that Petitioner had failed to show that Attorney Morris performed

deficiently.  (Doc. 16-18 at 2-3).  Petitioner appealed, and the First DCA affirmed.  (Doc. 16-21).

### 2.    Analysis of Petitioner's habeas claim

To obtain habeas relief, Petitioner must demonstrate that no fairminded jurist could agree with the state court's assessment of *Strickland*'s deficient performance prong.[5]   *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012).  Petitioner has not made that demonstration here.

Here is why.  Attorney Morris had no meritorious basis for making a more detailed motion for judgment of acquittal challenging the evidence against Petitioner.  A trial court will not grant a motion for judgment of acquittal unless, after viewing the evidence in the light most favorable to the State, no rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Simmons v. State*, 934 So. 2d 1100, 1111 (Fla. 2006).  "The trial court has the task of reviewing the evidence to determine whether

---

[5] The First DCA's decision was not accompanied by reasons, so the federal habeas court must "look through" the unexplained decision to the trial court's rationale.  *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

competent, substantial, evidence exists from which the jury could infer guilt to the exclusion of all other inferences." *State v. Law*, 559 So. 2d 187, 189 (Fla. 1989). "[A] judgment of acquittal should not be granted where the State has produced competent, substantial evidence to support every element of the crime." *Gay v. State*, 607 So. 2d 454, 457 (Fla. 1st DCA 1992).

The essential elements of Petitioner's charges were the following:

Count I:    (1) M.S. was less than 12 years of age;

(2) Petitioner committed an act upon M.S. in which his sexual organ penetrated or had union with M.S.'s vagina; and

(3) Petitioner was 18 years old or older at the time.

Count II:    (1) M.S. was 12 years of age or older but under the age of 16; and

(2) Petitioner committed an act with M.S. in which his sexual organ penetrated or had union with M.S's vagina;

Count III: (1) M.S. was 16 or 17 years old;

(2) Petitioner was 24 years old or older; and

(3) Petitioner engaged in sexual activity with M.S.

in which his sexual organ penetrated or had union

with M.S.'s vagina.

(Doc. 16-7 at 117-20).

The evidence at trial included M.S.'s testimony that Petitioner repeatedly inserted his penis into her vagina when she was under age 12, when she was between ages 12 and 16, and when she was 16 or 17 years old. Her testimony was corroborated by DNA evidence showing that Petitioner was the father of a child that Petitioner birthed when she was a minor. In light of that, fairminded jurists could certainly agree with the state postconviction court's finding that Attorney Morris did not perform deficiently by failing to file a more detailed motion for judgment of acquittal. The evidence in the record was plainly sufficient to survive a motion for judgment of acquittal and there is no reason to believe that a more detailed argument by Attorney Morris would have resulted in the motion being granted. *See, e.g.*, *McBride v. Sharpe*, 25 F.3d 962, 972 (11th Cir. 1994) (explaining that there "was clearly sufficient evidence"

13

to convict the defendant of raping a minor child where the "victim herself testified that [the defendant] raped her and forced her to perform oral sodomy"). Because a lawyer does not provide constitutionally deficient performance by failing to make lengthy arguments on clearly doomed motions, there is no merit to Petitioner's first ground for habeas relief. *See Brownlee v. Haley*, 306 F.3d 1043, 1046 (11th Cir. 2002) (holding that counsel was not ineffective for failing to raise issues clearly lacking in merit); *see also Torres v. Sec'y, Fla. Dep't of Corr.*, No. 2:14cv186/FtM-29CM, 2016 WL 6276847, at *10 (M.D. Fla. Oct. 27, 2016) (rejecting ineffective assistance of counsel claim because "[a]lthough Counsel did make only an admittedly 'boilerplate' motion for a judgment of acquittal at the close of the state's case, his performance was not deficient for failing to make a more complete motion because he had no grounds on which to do so"); *Wright v. Jones*, No. 16-60384-Civ-ZLOCH, 2017 WL 6558346, at *25 (S.D. Fla. Apr. 27, 2017) (finding that counsel did not provide ineffective assistance by making a cursory motion for judgment of acquittal where the evidence was clearly sufficient because "defense counsel is not required to make frivolous motions"), *adopted by* 2017 WL

6558363 (S.D. Fla. Oct. 27, 2017).  Because Petitioner has not shown that

the state postconviction court's decision was based upon an unreasonable

factual determination or was contrary to or an unreasonable application

of *Strickland*,  Petitioner is not entitled to federal habeas relief on Ground

One of his petition.

**B. Ground Two:  "Ineffective assistant [sic] of counsel, failure to file a motion to dismiss charge on Count 2, on expired statute of limitation."**

**Ground Three:  "Ineffective assistance of trial counsel, failure to file a motion to dismiss charge on Count 3, on expired statute of limitation."**

Petitioner's last two claims will be discussed together because they

share a common theme—i.e.., whether trial counsel performed

ineffectively by not seeking dismissal of Counts II and III based on the

potential running of the statute of limitations.  Petitioner raised both of

these claims in his state court Rule 3.850 motion, and they were rejected

on the merits by the state postconviction court.  (Doc. 16-18 at 3-4).

**1.    The state postconviction proceedings**

In Petitioner's Rule 3.850 motion, he argued that defense counsel

was ineffective for failing to file a motion to dismiss Counts II and III on

the ground that they were barred by the statute of limitations. (Doc. 16-16 at 8-11). Petitioner argued that he was charged with Count II on August 13, 2012, which was more than three years after M.S. disclosed the sexual abuse on February 8, 2008, and more than three years after M.S.'s eighteenth birthday. (*Id.*). With respect to Count III, Petitioner asserted that he was initially charged on August 1, 2011. (*Id.* at 9). Petitioner argued that this date was more than three years after M.S. disclosed the abuse on February 8, 2008. (*Id.* at 9-11).

At the evidentiary hearing on Petitioner's Rule 3.850 motion, Attorney Morris testified that a three-year statute of limitations applied to Counts II and III. (Doc. 16-17 at 13). He testified that the limitations period began to run on the date of disclosure of the offense, or the date the victim turned 18, whichever occurred first. (*Id.*). Attorney Morris acknowledged these counts may have been time-barred. (*Id.* at 15). Attorney Morris explained, however, that he considered the statute of limitations issue and made a strategic decision not to seek dismissal on that basis because he wanted to provide the jury with options when it

considered the offense of capital sexual battery charged in Count I.[6]  Here

is how Attorney Morris explained his trial strategy:

> **Attorney Morris:**  "I can tell you, the overall strategy of Mr. Mathis's case was . . . to try and convince a jury that, don't convict this guy of a life felony [Count I] that he's going to end up with a life sentence.  And let's see whether or not we can minimize his exposure as much as we possibly can."
> . . . .
> **Court:**  "And so your testimony is that you made a strategic decision not to move for a motion to dismiss because of the statute of limitation because of the choices that the jury would have been left with?"
>
> **Attorney Morris:** "Yes, ma'am.  Because the first, the capital sexual battery, of course, that could be prosecuted at any point in time.  The objective, the sole objective in the trial was, the State's evidence was a baby was conceived when M.S. was 16 and Mr. Mathis was either 46 or 47.
>
> And there was some evidence of the victim smoking marijuana, drinking alcohol, kind of running around as a wild child, had some problems, had been *Baker* acted multiple times.  There were multiple issues.  And to be able to look at the jury and say, yeah, I've got to admit this but this other stuff, here on this capital sexual battery, you shouldn't consider.
>
> And the objective ends up, I mean, that was the only argument that was available.  Otherwise we were going to end up going to a trial on a capital sexual battery with all of the same evidence that would have come into the trial anyways, including the child, probably."

---

[6] There was no statute of limitations defense to Count I because prosecution for a capital felony may be commenced at any time.  Fla. Stat. § 775.15(1).

(*Id.* at 14-16).   Attorney Morris further testified that even if Petitioner

had gone to trial only on Count I, evidence of the other instances of

unlawful sexual conduct with M.S. would have been admissible as similar

facts evidence under *Williams v. State*, 110 So. 2d 654 (Fla. 1959) and

Fla. Stat. § 90.404(2).   (Doc. 16-17 at 16-17).   Attorney Morris

summarized his strategy as "let's do what we can to get the least, the

lesser charge, [ ] in avoidance of a capital felony with a mandatory life

sentence."  (*Id.* at 25).[7]

After the hearing, the state postconviction court found that

Petitioner's counsel not had not performed deficiently under *Strickland*.

(Doc. 16-18 at 3-4).  In reaching that conclusion, the state postconviction

---

[7] It is worth noting that the First DCA, in an opinion issued on Petitioner's direct appeal, expressed its belief that a "reasonable attorney" might have abandoned the statute of limitations defense in order to provide the jury with an option other than capital sexual battery or acquittal. *Mathis v. State*, 204 So. 3d 104, 105-06 (Fla. 1st DCA 2016) (explaining that defense counsel "might have strategically determined that [Petitioner] could fare better if the jury had a third option— convicting him of a sex crime that would not result in mandatory life imprisonment").   As the First DCA put it:   "[Petitioner] stood comparatively less to lose with convictions on counts two and three, and perhaps much to gain." *Id.*

court made a factual finding that Attorney Morris decided as a matter of trial strategy to waive any possible statute of limitations defense to Counts II and III in order to provide the jury with the option of convicting Petitioner on charges far less severe than the capital sexual battery offense charged in Count I. (*Id.* at 4-5). Petitioner appealed, and the First DCA affirmed. (Doc. 16-21 at 2).

### 2.    Analysis of Petitioner's claim for habeas relief

As previously explained, the first prong of *Strickland* requires a showing that the attorney's performance was constitutionally deficient. The test for deficient performance "is not whether counsel could have done more; perfection is not required.  Nor is the test whether the best criminal defense attorneys might have done more." *Ward*, 592 F.3d at 1164 (cleaned up).  Instead, the inquiry focuses on "whether what counsel did was within the wide range of reasonable professional assistance." *Id.* (cleaned up).  Counsel will only be found to have performed deficiently if "no reasonable counsel would have taken the action." *Viers v. Warden*, 605 F. App'x 933, 942 (11th Cir. 2015).

19

When assessing counsel's performance, it must be remembered that trial strategy decisions will rarely form the basis for a finding of deficient performance. *See Nance v. Warden*, 922 F.3d 1298, 1302 (11th Cir. 2019) (recognizing that well informed "strategic choices" are "virtually unchallengeable"). As the Eleventh Circuit has explained, "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (cleaned up). That remains true, even if the strategy was unsuccessful. *Id.* at 1316.

If a state court reviewing a *Strickland* claim has determined that counsel made a strategic decision, then that determination is a factual finding that is entitled to a presumption of correctness in a federal habeas proceeding. *Fotopoulos v. Sec'y, Dep't of Corr.*, 516 F.3d 1229, 1232-33 (11th Cir. 2008). Rebuttal of that presumption requires "clear and convincing evidence." *Id.* (citing 28 U.S.C. § 2254(e)(1)). "By contrast, the question of whether the strategic . . . decision is reasonable enough

to fall within the wide range of professional competence is an issue of law.
. . ." *Provenzano v. Singletary*, 148 F.3d 1327, 1330 (11th Cir. 1998)

When all that is unpacked and applied here, it means the Court must answer two questions. First, it must answer whether Petitioner has come forward with clear and convincing evidence that rebuts the state court's factual finding that counsel's failure to seek dismissal of Counts II and III based on the statute of limitations was a strategic decision. Second, if the presumption has not been rebutted, then the Court must answer whether the state court's determination that counsel's strategy decision was a reasonable one was contrary to or an unreasonable application of *Strickland*.

Looking to the first question, Petitioner has not come forward with clear and convincing evidence to rebut the state court's finding that Attorney Morris made a strategic decision by not raising the statute of limitations issue. Moving then to the second question, the state court's decision was neither contrary to nor an unreasonable application of the *Strickland* test. As an initial matter, the state court applied the correct legal rule (i.e., the *Strickland* test). Thus, the state court's decision was

21

not "contrary to" clearly established Supreme Court precedent. *See Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (explaining that a state court decision is "contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law" as found by the Supreme Court) (cleaned up).

The focus of the Court's inquiry in this case, therefore, is whether the state court's decision involved an unreasonable application of *Strickland*. "To meet that standard, a prisoner must show far more than that the state court's decision was merely wrong or even clear error." *Kayer*, 141 S. Ct. at 523 (cleaned up). Instead, what is required is a showing that the state court's decision is so obviously wrong that "no fairminded jurist could agree" with it. *Holsey*, 694 F.3d at 1257 (cleaned up). Petitioner has not met that rigorous standard.

Attorney Morris fully explained that he recognized the statute of limitations issue and decided not to pursue it in order to give the jury less severe options than capital sexual battery when it was deliberating. A defense attorney facing the same situation as Attorney Morris could have reasonably concluded that this was the best way for Petitioner to

22

potentially avoid a capital sexual battery conviction. Under the circumstances of this case, Attorney Morris surmised that (regardless of whether he gained dismissal of Counts II and III) the jury was going to hear that Petitioner had impregnated M.S. when she was a minor. And he knew that evidence would be incredibly damning for Petitioner. So, he decided the best defense was to provide the jury with the option of convicting Petitioner of lesser offenses as opposed to having only the option of convicting on capital sexual battery.[8] That was a reasonable strategy. *See Johnson v. Warren*, 344 F. Supp. 2d 1081, 1096 (E.D. Mich. 2004) (explaining that "counsel's decision to concede petitioner's guilt to the lesser included offense . . ., in an attempt to win an acquittal on the [greater] charged offenses, was a legitimate trial strategy").

Perhaps some lawyers faced with the same dilemma would have taken a different strategic approach than Attorney Morris. But Attorney

---

[8] At trial, there was a discussion on the record between the trial judge, Petitioner, and Attorney Morris regarding the defense strategy of essentially admitting guilt to a lesser offense with the hope that the jury would find Petitioner guilty of capital sexual battery. (*See* Doc. 16-7 at 111-12). Petitioner stated that he agreed to the strategy and was satisfied with it. (*Id.* at 112).

Morris "face[d] a choice where his conduct [was] neither directly prohibited by law nor directly required by law, which is to say: the choice is strategic, and a court must not second-guess counsel's strategy."[9] *Bates v. Sec'y, Fla. Dep't of Corr.*, 768 F.3d 1278, 1298 (11th Cir. 2014). Thus, a fairminded jurist could agree with the state court that Attorney Morris's strategic decision not to seek dismissal of Count III based on the statute of limitations was reasonable. *See Rager v. Inch*, No. 3:19cv740/LC/HTC, 2021 WL 968958, at *6 (N.D. Fla. Jan. 25, 2021) (denying habeas relief on claim that counsel performed ineffectively by failing to raise statute of limitations defense because "counsel made a strategic decision not to raise the statute of limitations issue" out of concern that doing so could have led to more serious charges against the defendant), *adopted by* 2021 WL 964039 (N.D. Fla. Mar. 15, 2021). Accordingly, Petitioner has not shown that the state postconviction court's decision was either contrary to or an unreasonable application of

---

[9] It bears mentioning that Attorney Morris was an experienced criminal defense attorney who had handled many similar cases in his career, and "[w]hen courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." *Chandler*, 218 F.3d at 1316.

*Strickland.*  He, therefore, is not entitled to habeas relief on Grounds Two or Three of his petition.

## V.    Conclusion

For the reasons above, Petitioner's 28 U.S.C. § 2254 habeas corpus petition lacks merit and should be denied.

## VI.    Certificate of appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the Court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting § 2253(c)(2)).  "At the COA stage, the only question is whether

the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his [or her] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. 100, 115 (2017) (citing *Miller-El*, 537 U.S. at 327).  The petitioner here cannot make that showing.  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED** that:

1.      Petitioner's 28 U.S.C. § 2254 petition (Doc. 1) be **DENIED** and this case be **DISMISSED**.

2.      A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 10th day of April 2024.

/s/ *Zachary C. Bolitho*

Zachary C. Bolitho
United States Magistrate Judge

## **Notice to the Parties**

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.